UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| JANET JEANES,<br>Plaintiff | CIVIL ACTION |
|---|---|
| VERSUS | NO. 16-1259 |
| GREG MCBRIDE, ET AL.,<br>Defendants | SECTION: "E" (4) |

## ORDER AND REASONS

Before the Court are two motions in limine to limit the testimony of Defendant's proposed expert Dr. Jerry Householder, filed by Plaintiff Janet Jeanes.[1] Jeanes moves to exclude portions of Dr. Householder's testimony related to the design of the metal building at issue in this case[2] and portions of his testimony containing legal conclusions.[3] Defendant Greg McBride opposes the motions.[4] For the reasons that follow, the Court **DENIES** Jeanes' motion to exclude testimony related to the design of the building[5] and **GRANTS** Jeanes' motion to exclude testimony containing legal conclusions.[6]

## BACKGROUND

This case arises from the construction of a building ("the Building") on Jeanes' property at 2534 Hampton Dupre Road in Pine Prairie, Louisiana.[7] In the summer of 2010, Jeanes began discussing the construction of the Building with McBride.[8] McBride submitted a proposal to Jeanes, which she signed on September 23, 2010 ("the

---

[1] R. Docs. 113, 115.
[2] R. Doc. 113.
[3] R. Doc. 115.
[4] R. Doc. 118, 119.
[5] R. Doc. 113.
[6] R. Doc. 115.
[7] R. Doc. 174 at 8, ¶ 7(1) (uncontested material facts in pretrial order).
[8] *Id.* at 9, ¶ 7(2).

1

Proposal").⁹ The materials and plans for the roof of the Building were provided by S & S Steel Buildings, Inc., doing business as Metal Roofing Supply ("S & S").¹⁰ Roy Bergis Smith, through his company, E. Smith Plumbing Service, Inc. ("E. Smith Plumbing"), provided plumbing services for the Building.¹¹

On September 9, 2016, Jeanes filed the instant suit.¹² She alleges McBride did not obtain the permit required for constructing the Building and that there were numerous defects in the Building.¹³ In her Complaint and Amended Complaint, Jeanes names five Defendants: McBride; Metal Buildings by Mac, LLC ("Metal Buildings"); S & S; Roy Bergis Smith; and E. Smith Plumbing. She brings five claims: (1) breach of contract against all Defendants, (2) negligence against S & S, (3) fraud against all Defendants, (4) violation of the Louisiana Unfair Trade Practices Act ("LUTPA")¹⁴ against all Defendants, and (5) successor liability against Metal Buildings.¹⁵ The claims against all Defendants but McBride have been dismissed.¹⁶ The claims against McBride are for breach of contract, fraud, and violation of LUTPA.¹⁷

McBride retained Dr. Householder, who has extensive experience in structural engineering and construction,¹⁸ to offer expert testimony about construction defects and design defects in the Building and to act as a rebuttal expert to Jeanes' expert witness

---

[9] *Id.* at ¶¶ 7(2), (3). The proposal is on the record at R. Doc. 112-3.
[10] *Id.* at ¶¶ 7(6), (7).
[11] *Id.* at ¶ 7(8).
[12] R. Doc. 1.
[13] *Id.* at 5, ¶ 13; 6–7, ¶¶ 17–20.
[14] LA. REV. STAT. § 51:1401 *et seq*.
[15] R. Docs. 1, 35.
[16] R. Docs. 55 (dismissing claims against S & S without prejudice), 67 (dismissing claims against Metal Buildings without prejudice), 78 (dismissing claims against S & S with prejudice), 84 (dismissing claims against Metal Buildings with prejudice), 160 (notice of settlement of claims against Roy Bergis Smith and E. Smith Plumbing Service, Inc.).
[17] R. Doc. 1.
[18] Dr. Householder's curriculum vitae is on the record at R. Doc. 113-2 at 9–19.

Philip Beard.[19] Dr. Householder prepared an expert report for McBride.[20] In his report, he opines that Jeanes acted as her own general contractor and that the Building was constructed in conformance with the plans and within the standards expected of a contractor.[21] He offers rebuttal opinions addressing 21 of Beard's conclusions.[22]

On April 5, 2019, Jeanes filed the instant motions to limit Dr. Householder's testimony.[23] She argues (1) Dr. Householder may not offer testimony containing legal opinions or legal conclusions[24] and (2) Dr. Householder should not be permitted to testify regarding design defects.[25] McBride opposes.[26]

## RULE 702 STANDARD

Rule 702 of the Federal Rules of Evidence permits an expert witness with "scientific, technical or other specialized knowledge" to testify if such testimony "will help the trier of fact to understand the evidence or to determine a fact in issue," so long as (1) "the testimony is based upon sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the expert has reliably applied the principles and methods to the facts of the case."[27]

The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[28] provides the analytical framework for determining whether expert testimony is admissible under Rule 702. Under *Daubert*, courts, as "gatekeepers," are tasked with making a preliminary assessment of whether expert testimony is both

---

[19] R. Doc. 113-2 at 1.
[20] *Id.* at 1–8.
[21] *Id.* at 2.
[22] *Id.* at 2–7.
[23] R. Docs. 113, 115.
[24] R. Doc. 115-1.
[25] R. Doc. 113-1.
[26] R. Docs. 118, 119.
[27] FED. R. EVID. 702.
[28] 509 U.S. 579 (1993).

3

relevant and reliable.[29] The party offering the expert opinion must show by a preponderance of the evidence that the expert's testimony is reliable and relevant.[30]

The reliability of expert testimony "is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid."[31] "The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation."[32] In *Daubert*, the Supreme Court enumerated several non-exclusive factors that courts may consider in evaluating the reliability of expert testimony.[33] "These factors are (1) whether the expert's theory can or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community."[34] The Supreme Court cautioned that the reliability analysis must be flexible: the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."[35] Thus, "not every *Daubert* factor will be applicable in every situation . . . and a court has discretion to consider other factors it deems relevant."[36] In sum, the district court is offered broad latitude in making expert testimony determinations.[37]

---

[29] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (citing *id.* at 592–93).
[30] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).
[31] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). *See also Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584–85 (5th Cir. 2003).
[32] *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 550 (E.D. La. 2015) (internal citations omitted).
[33] *Daubert*, 509 U.S. at 592–96.
[34] *Bocanegra*, 320 F.3d at 584–85 (citing *id.* at 593–94).
[35] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).
[36] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 326 (5th Cir. 2004).
[37] *See, e.g., Kumho Tire*, 526 U.S. at 151–53.

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact.[38] "Unless wholly unreliable, the data on which the expert relies goes to the weight and not the admissibility of the expert opinion."[39] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[40]

However, "the expert's testimony must be reliable at each and every step or else it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia."[41] "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."[42]

"Proposed testimony must be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known."[43] "[Although] reliable expert testimony often involves estimation and reasonable inferences from a sometimes incomplete record," an expert may not assume facts that "differ[] frequently and substantially from the undisputed record evidence . . . [or] ma[ke] numerous assumptions with no apparent underlying

---

[38] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).
[39] *Rosiere v. Wood Towing, LLC*, No. 07-1265, 2009 WL 982659, at *1 (E.D. La. Apr. 8, 2009) (citing *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)) (emphasis added); *Wolfe v. McNeil-PPC, Inc.*, No. 07-348, 2011 WL 1673805, at *6 (E.D. Pa. May 4, 2011).
[40] *Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596) (internal quotation marks omitted).
[41] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (internal quotation marks and citation omitted).
[42] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)
[43] *Daubert*, 509 U.S. at 590.

rationale."[44] "An expert's opinion must be preceded by facts in evidence and cannot be the basis of speculation or conjecture."[45]

Under Rule 703 of the Federal Rules of Evidence, expert witnesses may base opinions on facts or data that the expert "has been made aware of or personally observed," including otherwise inadmissible facts or data if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject."[46] A district court is "best placed to evaluate" the reasonableness of an expert's reliance on facts or data.[47] A district court may exclude expert testimony when it is "based on insufficient, erroneous information."[48]

## ANALYSIS

### I. Householder may not offer legal conclusions.

Jeanes argues that Dr. Householder's testimony about the contractual responsibilities of the parties constitutes impermissible legal conclusions.[49] Jeanes enumerates fifteen statements in Dr. Householder's expert report that she argues are legal conclusions.[50] These include statements that Jeanes "acted as her own general contractor" and statements about the responsibilities of general contractors and subcontractors under the contract.[51]

Dr. Householder has not been and could not be certified as a legal expert. Rule 704 provides, "An opinion is not objectionable just because it embraces an ultimate issue."

---

[44] *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 516 (5th Cir. 2013)
[45] *Lewis v. Par. of Terrebonne*, 894 F.2d 142, 146 (5th Cir. 1990).
[46] FED. R. EVID. 703.
[47] *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 526 (5th Cir. 2013).
[48] *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009)
[49] R. Doc. 115-1 at 5–7.
[50] *Id.* at 7–8.
[51] *Id.*

However, "[A]n expert may never render conclusions of law."[52] Experts are not permitted to offer "legal conclusions on the contractual responsibilities of the parties" to a contract[53] unless interpreting the "technical meaning of terms used in [an] industry."[54]

Dr. Householder does not interpret technical terms used in the Proposal. Instead, Dr. Householder opines that Jeanes "acted as her own general contractor for the overall project" and that McBride[55] was the "metal building and concrete subcontractor."[56] He does not base this opinion on technical terms in the contract. Dr. Householder will not be permitted to offer this legal conclusion.

Throughout his report, Dr. Householder also opines generally about the legal responsibilities of general contractors and subcontractors.[57] These conclusions are not interpretations of technical terms used in the Proposal, but are legal conclusions about the responsibilities of the parties. The Court will not permit Dr. Householder to offer expert testimony about these legal conclusions. Dr. Householder will not be allowed to testify with respect to whether Jeanes or McBride was the "general contractor" and what responsibilities attach to that designation. The jury will determine the legal responsibilities of the parties under the contract.

Moreover, some of Dr. Householder's opinions impute responsibility for design defects to S & S. For example, Dr. Householder states the wind bracing is "clearly a design

---

[52] *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir.2009).
[53] *Dickson v. Sklarco L.L.C.*, No. 5:11-CV-0352, 2014 WL 4443423, at *5 (W.D. La. Sept. 9, 2014).
[54] *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000); *accord Sheet Metal Workers, Int'l Assn., Local Union No. 24 v. Architectural Metal Works, Inc.*, 259 F.3d 418, 424 n. 4 (6th Cir.2001) ("[T]he construction of unambiguous contract terms is strictly a judicial function; the opinions of percipient or expert witnesses regarding the meaning(s) of contractual provisions are irrelevant and hence inadmissible.").
[55] Dr. Householder refers to McBride as "Metal Buildings by Mac." R. Doc. 113-2 at 2. During the relevant time period, McBride conducted business as Metal Buildings by Mac. R. Doc. 174 at 9, ¶ 7(3).
[56] R. Doc. 113-2 at 2.
[57] R. Doc. 113-2.

issue" that is the responsibility of S & S.[58] The parties previously filed motions for summary judgment on the issue of responsibility for design defects, specifically dealing with whether McBride is entitled to immunity on claims related to design defects in the Building under LA. REV. STAT. § 9:2771.[59] On June 4, 2019, the Court granted Jeanes motion for partial summary judgment and denied McBride's motion for summary judgment, finding McBride is not entitled to immunity under LA. REV. STAT. § 9:2771.[60] In the Court's ruling on the parties' motions for summary judgment, the Court found the Complaint alleged McBride was responsible for design defects, and McBride made or caused to be made the plans and specifications for the Building.[61] As a result, Dr. Householder may not opine that McBride is not responsible for design defects in the Building.

## II. Dr. Householder may testify regarding construction and design defects.

Under Rule 26(a)(2)(B)(i), an expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them."[62] Jeanes argues that, although Dr. Householder's expert report "mentions the design [of the Building] tangentially in a few areas," he does not opine on the merits of the Building's design or the presence of design defects.[63] She argues that, as a result, Dr. Householder should not be permitted to testify regarding the presence of design defects in the Building.[64] In

---

[58] R. Doc. 113-2 at 4, ¶ 6.
[59] R. Docs. 112, 114.
[60] R. Doc. 190.
[61] R. Doc. 190 at 21–23.
[62] FED. R. CIV. P. 26(a)(2)(B)(i).
[63] R. Doc. 113-1 at 2–3.
[64] *Id.* at 5–6.

response, McBride points to numerous places in Dr. Householder's report where he discusses design defects.[65]

In his report, Dr. Householder addresses several design defects, including whether the Building is defective because the "purlins in one area [do] not bear[] on top of the truss," the two buildings are improperly joined together, or the wind bracing is improper. The Court finds McBride adequately disclosed Dr. Householder's opinions regarding design defects under Rule 26(a)(2)(B)(i). As a result, Dr. Householder will be permitted to testify regarding design defects but only to the extent his opinions are included in his report or were adequately explained at his deposition.[66] The Court cautions that, as stated above, Dr. Householder will not be permitted to opine regarding legal responsibility for design defects.

Jeanes also challenges the basis of Dr. Householder's opinions, challenging the opinions on the basis that he is not "prepared to offer an opinion about whether the building is capable of sustaining a 120-mile per hour wind loads" and "did not run calculations" with respect to his opinion regarding the joining of the two buildings.[67] These issues affect the weight of Dr. Householder's testimony rather than its admissibility, and will be left for the finder of fact.[68] Jeanes may cross-examine Beard with respect to the basis of his opinions.

## **CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's motion in limine to exclude the portions of the testimony of Defendant's proposed expert Dr. Householder as

---

[65] R. Doc. 119 at 3–8.
[66] The Court instructed the parties to be prepared to point out relevant portions of Dr. Householder's report and deposition in the event objections are raised at the trial.
[67] R. Doc. 113 at 2–3.
[68] *See Primrose*, 382 F.3d at 562.

9

it relates to the design of the metal building at issue in this case be and hereby is **DENIED**.[69]

**IT IS FURTHER ORDERED** that Plaintiff's motion in limine to exclude the portions of Dr. Householder's testimony containing legal conclusions be and hereby is **GRANTED**.[70]

**New Orleans, Louisiana, this 22nd day of June, 2019.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[69] R. Doc. 113.
[70] R. Doc. 115.