# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JANET JEANES,**<br>**Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-1259** |
| **GREG MCBRIDE, ET AL.,**<br>**Defendants** | **SECTION: "E" (4)** |

## ORDER

Before the Court are (1) Plaintiff Janet Jeanes' objections to certain exhibits Defendant Greg McBride seeks to introduce[1] and (2) McBride's objections to certain exhibits Jeanes seeks to introduce.[2] Jeanes and McBride have filed responses to these objections.[3] The Court rules on the objections, as set forth below.

## BACKGROUND

This case arises from the construction of a building ("the Building") on Jeanes' property at 2534 Hampton Dupre Road in Pine Prairie, Louisiana.[4] In the summer of 2010, Jeanes began discussing the construction of the Building with McBride.[5] McBride submitted a proposal to Jeanes, which she signed on September 23, 2010 ("the Proposal").[6] The materials and plans for the roof of the Building were provided by S & S Steel Buildings, Inc., doing business as Metal Roofing Supply ("S & S").[7] Roy Bergis Smith, through his company, E. Smith Plumbing Service, Inc. ("E. Smith Plumbing"), provided plumbing services for the Building.[8]

---

[1] R. Doc. 180.
[2] R. Doc. 188.
[3] R. Docs. 191, 192, 201.
[4] R. Doc. 174 at 8, ¶ 7(1) (uncontested material facts in pretrial order).
[5] *Id.* at 9, ¶ 7(2).
[6] *Id.* at ¶¶ 7(2), (3). The proposal is on the record at R. Doc. 112-3.
[7] *Id.* at ¶¶ 7(6), (7).
[8] *Id.* at ¶ 7(8).

On September 9, 2016, Jeanes filed the instant suit.[9] She alleges McBride did not obtain the permit required for constructing the Building and that there were numerous defects in the Building.[10] In her Complaint and Amended Complaint, Jeanes names five Defendants: McBride; Metal Buildings by Mac, LLC ("Metal Buildings"); S & S; Roy Bergis Smith; and E. Smith Plumbing. She brings five claims: (1) breach of contract against all Defendants, (2) negligence against S & S, (3) fraud against all Defendants, (4) violation of the Louisiana Unfair Trade Practices Act ("LUTPA")[11] against all Defendants, and (5) successor liability against Metal Buildings.[12] The claims against all Defendants but McBride have been dismissed.[13] The claims against McBride are for breach of contract, fraud, and violation of LUTPA.[14]

## I. McBride's Objection to Exhibit 43 Overruled

McBride objects[15] to Exhibit 43, which consists of two pages of sketches of the Building, Bates Nos. Jeanes 0007–08. He argues the Proposal is not ambiguous and, as a result, the jury may not look outside the contract's four corners to interpret it.[16] Jeanes responds that extrinsic evidence is admissible to interpret the contract because the Proposal is "manifestly incomplete."[17] She also argues the Proposal is ambiguous and, as a result, parol evidence is admissible.[18]

---

[9] R. Doc. 1.
[10] *Id.* at 5, ¶ 13; 6–7, ¶¶ 17–20.
[11] LA. REV. STAT. § 51:1401 *et seq.*
[12] R. Docs. 1, 35.
[13] R. Docs. 55 (dismissing claims against S&S without prejudice), 67 (dismissing claims against Metal Buildings without prejudice), 78 (dismissing claims against S&S with prejudice), 84 (dismissing claims against Metal Buildings with prejudice), 160 (notice of settlement of claims against Roy Bergis Smith and E. Smith Plumbing Service, Inc.).
[14] R. Doc. 1.
[15] R. Doc. 188 at 1–2.
[16] *Id.*
[17] R. Doc. 191 at 2.
[18] R. Doc. 201 at 2-3.

Article 2046 of the Louisiana Civil Code provides, "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[19] "Louisiana law does allow, however, for the admissibility of parol evidence when the written agreement is manifestly incomplete and is not intended to constitute the entire agreement between the parties."[20] Parol evidence also is admissible to resolve ambiguity in the terms of a contract.[21]

In this case, the Proposal consists of two pages: each page consists of a list of specifications for each of the two metal structures that together made up the Building.[22] The space for "Job Location" is left blank.[23] The Proposal includes the following specifications:

- 3" VRR Insulation At Roof and Walls (Wall Insulation According to Plans)

- One- 12' × 10' Framed Opening at Bay #2 of Front Sidewall Endwall (See Drawing)

- One- 12' × 10' Framed Opening at Bay #2 of Back Sidewall (See Drawing).[24]

No "Drawing" and no "Plans" were attached to or incorporated into the Proposal. The Court finds the Proposal is manifestly incomplete. It does not specify the location of the Building, the date by which construction would be commenced or competed, where doors and windows were to be located, or many other responsibilities of the parties. The Proposal does not include a merger clause stating it represents the entirety of the agreement between the parties; in fact, it references other unattached documents as

---

[19] LA. CIV. CODE art. 2046.
[20] *Condrey v. SunTrust Bank of Georgia*, 429 F.3d 556, 563 (5th Cir. 2005) (citing *United Inv'rs Life Ins. Co. v. Alexander* (La. App. 2 Cir. 11/1/95), 662 So. 2d 831, 833); *Edwards v. State Through Dep't of Corr.*, 244 So. 2d 69, 72 (La. Ct. App. 1971)).
[21] *See Dixie Campers, Inc. v. Vesely Co.*, 398 So. 2d 1087, 1088 (La. 1981).
[22] Trial Ex. 3.
[23] *Id.*
[24] *Id.*

"Plans" and "Drawing." As a result, parol evidence is admissible to complete the terms of the Proposal.

Parol evidence also is admissible because the terms of the Proposal are ambiguous. The Proposal does not contain any express terms specifying whether or not the Building is intended for residential use.[25] Moreover, for the reasons the Court finds the Proposal incomplete, it also finds the terms of the Proposal ambiguous. The Court does not exclude Exhibit 43 as inadmissible parol evidence.

McBride argues Exhibit 43 is unfairly prejudicial under Rule 403. Exhibit 43 has significant probative value because the Proposal is manifestly incomplete and ambiguous, and the exhibit is relevant to the parties' intent. Admission of Exhibit 43 does not unfairly prejudice McBride.

## II. McBride's Objection to Exhibits 44–48 Overruled

McBride objects to Exhibits 44–48, which are documents obtained from the Rapides Area Planning Commission ("RAPC").[26] These exhibits consist of the following:

- Exhibit 44: Schedule of Activity for Permit EV-10-0823-P, Bates Nos. Jeanes 1893–94;

- Exhibit 45: RAPC Inspection Guidelines, Bates Nos. Jeanes 2844–45;

- Exhibit 46: RAPC Permit Office Required Inspections, Bates Nos. Jeanes 2464;

- Exhibit 47: Kisatchie-Delta Regional Code Compliance Office, 2008 NEW, Bates No. Jeanes 2465; and

- Exhibit 48: RAPC 2011 NEC,[27] Bates No. Jeans 2708.

---

[25] Trial Ex. 3.
[26] R. Doc. 188 at 2–4.
[27] "National Electrical Code."

McBride argues that, under the express provisions of the Proposal, he is not responsible for permits because the Proposal expressly states McBride will not provide permits and that, as a result, the exhibits are irrelevant, hearsay, and excluded by the parol evidence rule.[28]

## A.    Relevance and Parol Evidence

The Proposal consists of two pages, with each page describing a metal building.[29] With respect to the metal building described on the first page, the Proposal states, "Foundation And Permits Not Provided By" McBride.[30] With respect to the metal building described on the second page, the Proposal states, "Dirt Work, Permits, Windows, And Roll Up Doors Not Provided By" McBride.[31] Both pages of the Proposal contain a statement in bold and capital letters, "All permits slab and jobsite clean-up not furnished by" McBride.[32]

### 1.    Relevance and Subsequent Modifications

In response to McBride's objections to Exhibits 44–48 based on relevancy, Jeanes states the Proposal's provisions that McBride was not responsible for obtaining permits were subsequently modified.[33] She appears to argue that, because the Proposal's express provisions that McBride would not provide or furnish permits were subsequently modified to provide that McBride would provide permits and inspections, Exhibits 44–48 are admissible to show the relevant requirements for permits and inspections.

---

[28] *Id.* at 3.

[29] Trial Ex. 3.

[30] Trial Ex. 3 at 1. The Proposal states the permits are not provided by "Metal Buildings by Mac." *Id.* It is uncontested that, during the events at issue in this case, McBride conducted business as "Metal Buildings by Mac." R. Doc. 176 at 9, ¶ 7(3).

[31] Trial Ex. 3 at 2.

[32] *Id.* at 1, 2.

[33] R. Doc. 191 at 3.

However, Jeanes does not state in her first response to the objections where, when, how, or by whom the Proposal was modified.[34] As a result, the Court ordered Jeanes to clarify the nature of the alleged subsequent modifications.[35]

Jeanes filed a supplemental memorandum regarding the modifications to the Proposal.[36] She lists the four following alleged modifications:

(1) modification to the Proposal's provisions stating McBride would not furnish or provide permits,

(2) a modification to the Proposal's provision that McBride would not furnish windows,

(3) a modification to the Proposal's provision that McBride would not provide roll up doors, and

(4) a modification to the Proposal's provision that McBride would not provide slab and foundation work.[37]

Only the first alleged modification, a modification to the Proposal's provision that McBride would not furnish or provide permits, is relevant to the admissibility of Exhibits 44–48. Article 1848 of the Civil Code provides that "testimonial or other evidence" may be admitted to prove a written contract "was modified by a subsequent and valid oral agreement."[38] Jeanes admits the Proposal was not modified by McBride's *conduct*

---

[34] R. Doc. 191. The Court notes that, in the pretrial order, the parties state it is a contested fact "[w]hether McBride subsequently assumed several additional obligations contrary to the statements in the Proposal and, if he did, whether the original agreement was modified by the assumption." R. Doc. 174 at 10. In the pretrial order, the parties also state it is a contested issue of law "[w]hether Jeanes and McBride subsequently modified their contract either orally or by their conduct." *Id.* at 20. However, the pretrial order does not detail the nature of the alleged subsequent modifications.
[35] R. Doc. 199.
[36] R. Doc. 201.
[37] *Id.*
[38] La. Civ. Code 1848.

*subsequent* to the execution of the Proposal.[39] She asserts McBride obtained a permit for the Building on July 29, 2010, nearly two months *prior to* the Proposal's execution on September 23, 2010.[40] Jeanes will not be permitted to argue McBride's conduct constitutes a subsequent modification to the contract under article 1848.

Although Jeanes admits that there was no subsequent modification *by conduct* with respect to the first alleged modification, Jeanes argues McBride made an *oral* modification to the Proposal after the Proposal was executed.[41] She cites McBride's deposition, in which he states he gave Jeanes her permit and told her, "whenever you need to do something I'll tell you to call the man and do what you got to do."[42] McBride's testimony is admissible to show the parties subsequently modified the contract orally to agree that McBride agreed to be responsible for the permits for the Building, but this does not resolve McBride's objection to Exhibits 44–48.

With respect to alleged modifications 2, 3, and 4, to the Proposal's provisions that McBride would not furnish windows, doors, or foundation and slab work, Jeanes argues she and McBride agreed to modify the contract orally to provide McBride would be responsible for those items.[43] She points to evidence of McBride's conduct in actually installing the windows and doors and performing the foundation and slab work to show that they modified the contract.[44] Jeanes will be permitted to elicit testimony about these alleged subsequent modifications.

---

[39] *Id.* at 4.
[40] *Id.* at 5.
[41] *Id.* at 4–6.
[42] R. Doc. 201-1 at 3.
[43] R. Doc. 201.
[44] *Id.*

With respect to McBride's objection to Exhibits 44–48, only the first alleged modification, allegedly modifying the Proposal's provision that McBride would not furnish or provide permits, is relevant to the admissibility of Exhibits 44–48. Jeanes will be allowed to introduce evidence that the parties orally modified the Proposal in that regard. As a result, Exhibits 44–48 are relevant, as they show the history of permitting for the project and the requirements for permits and inspections. As a result, Exhibits 44–48 are admissible for this purpose.

## 2. Parol Evidence

In response to McBride's objections to Exhibits 44–48, Jeanes also argues the exhibits are admissible because they contain the requirements for inspections of residential construction that are incorporated into the contract.[45] The Court of Appeal for the Louisiana First Circuit has explained:

> It is an established principle that laws that exist at the time of execution of a contract form a part of that contract and are incorporated in it. These laws form part of the contract as though expressly written therein. Thus, where a parish or city has in effect a building code, the provisions of that building code form a part of every construction contract executed in that parish or city. Such a contract contemplates a building constructed in compliance with local building code requirements, as though expressly written into the contract.[46]

As explained above in connection with McBride's objection to Exhibit 43, the Proposal is ambiguous with respect to whether the parties intended a part of the Building

---

[45] R. Doc. 191 at 3.
[46] *Bonvillain Builders, LLC v. Gentile*, 2008-1994 (La. App. 1 Cir. 10/30/09), 29 So. 3d 625, 632, *writ denied,* 2010-0059 (La. 3/26/10), 29 So. 3d 1264 (citing *Morton Bldgs., Inc. v. Redeeming Word of Life Church, Inc.*, 97-2251 (La. App. 1 Cir. 11/6/98), 744 So. 2d 5, 9, *writ denied,* 99-0687 (La. 4/30/99), 741 So. 2d 16; *Mut v. Newark Ins. Co.*, 289 So. 2d 237, 240 (La. Ct. App. 1973), *writ denied,* 290 So. 2d 910 (La. 1974), and *writ denied,* 290 So. 2d 912 (La. 1974)).

to be residential when they entered into the contract.[47] To the extent the Proposal contemplates the construction of a residential property, it incorporates the requirements of the building code for inspections of residential property.[48]

McBride appears to argue that, even if the parties intended the Building have residential use, he was not required to comply with the building code's requirements. The Court does not agree. In *Velasquez v. Custom Built Homes, Inc.*, the Court found the contract incorporated the requirements of the applicable building code, but "[t]here was no express provision in the contract specifying which party had the responsibility to comply with the Building Code."[49] Because of the absence of a specific contractual provision, the Court turned to custom and found "[t]he record clearly indicates that it is customary that the contractor comply with the Building Code."[50]

In this case, the Proposal does not explicitly specify which party was responsible for complying with the building code. The Proposal includes the following provisions:

- "Foundation And Permits Not Provided By" McBride

- "Dirt Work, Permits, Windows, And Roll Up Doors Not Provided By" McBride

- "All permits slab and jobsite clean-up not furnished by" McBride.[51]

The Proposal does not mention who has the responsibility for compliance with the applicable building code or to obtain inspections. The Court finds the provisions of the

---

[47] The pretrial order states it is a contested fact "[w]hether the building required inspections" and "[w]hether McBride knew since before construction on the Building began that Jeanes intended the Building to include a residential area containing living quarters." R. Doc. 174 at 9, ¶¶ 8(3), (4).
[48] The Court notes that Plaintiff's expert Philip Beard bases the opinions in his report, R. Doc. 123-1 at 15–38, on the International Building Code, which has been adopted by the Louisiana State Uniform Construction Code Council, LA. REV. STAT. § 40:1730.28(A)(1). The Court has found admissible Beard's opinions regarding compliance with the building code. R. Doc. 194.
[49] *Velasquez v. Custom Built Homes, Inc.*, 246 So. 2d 699, 700 (La. Ct. App. 1971).
[50] *Id.*
[51] Trial Ex. 3.

Proposal are ambiguous with respect to whether these provisions express the parties' intent for Jeanes or McBride to be responsible for complying with the building code. Because of this ambiguity, parol evidence regarding the parties' intent with respect to who is responsible for complying with the building code is admissible. Evidence regarding custom, if presented by a duly qualified expert, also will be admitted.

Because evidence will be admitted to show the parties intended for a portion of the Building to be residential when the parties executed the Proposal, the provisions of the building code in Exhibits 44–48 are relevant. Jeanes will be permitted to introduce Exhibits 44–48 at trial.

### 3. Rule 403

McBride argues Exhibits 44–48 are unfairly prejudicial under Rule 403.[52] As explained above, the exhibits have significant probative value, and their admission will not unfairly prejudice McBride.

### B. Hearsay

McBride also argues the exhibits are inadmissible hearsay.[53] He does not explain the basis for this objection. Hearsay is an out-of-court statement offered to "prove the truth of the matter asserted in the statement."[54] Exhibits 44–48 are not out-of-court statements and are not hearsay. Even if the exhibits were assertive statements, they are all records maintained by RAPC and would fall under the Public Records Exception, codified at Rule 803(8).

### C. Blake Steiner Testimony

---

[52] R. Doc. 188 at 4.
[53] *Id.* at 2.
[54] FED. R. EVID. 801.

Jeanes represents that Exhibit 44 will be used in connection with the testimony of Jeanes, McBride, and RAPC inspector Blake Steiner, and that Exhibits 45–48 will be used only in connection with Steiner's testimony. In McBride's objection to Exhibits 44–48, he includes an argument regarding the admissibility of Steiner's testimony.[55] This objection will be addressed in connection with Exhibit 51.

### III. McBride's Objection to Exhibit 49 Sustained

McBride objects[56] to the admission of Trial Exhibit 49, which consists of "Building Plans on File for EV-10-0823-P," Bates Nos. Jeanes 2469–80. The Court notes Exhibit 49 is a duplicate of pages 16–27 of Trial Exhibit 6, Bates Nos. Jeanes 2469–80, to which the parties have not filed an objection. Trial Exhibit 6 will be admitted into evidence by agreement of the parties based on its relevance. Exhibit 49 would be duplicative. As a result, the Court sustains McBride's objection on that basis.

The Court also notes that McBride objects to Exhibit 49 on the basis that it is connected to Steiner's testimony.[57] The parties have indicated on their index of exhibits that Jeanes and McBride will testify with respect to Exhibit 6.

### IV. McBride's Objection to Exhibit 50 Sustained

McBride objects[58] to the admission of Trial Exhibit 50, which consists of a "Flood Mapping Site" Map, Bates No. Jeanes 2486. The Court notes Exhibit 50 is a duplicate of page 30 of Trial Exhibit 9, Bates No. Jeanes 2486, to which the parties have not filed an objection. Trial Exhibit 9 will be admitted into evidence, and Exhibit 50 would be duplicative. As a result, the Court sustains McBride's objection on that basis.

---

[55] R. Doc. 188 at 3.
[56] R. Doc. 188 at 4–5.
[57] *Id.*
[58] *Id.* at 5.

## V.    McBride's Objection to Exhibit 51 Sustained in Part

McBride objects to Exhibit 51, the inspection reports Steiner prepared with respect to the Building's slab and plumbing ("the Steiner Report").[59] He argues the Steiner Report is inadmissible hearsay. Jeanes responds that the Steiner Report sets out factual findings from a legally authorized investigation under Rule 803(8)(A)(iii).[60]

Rule 803(8) of the Federal Rules of Evidence codifies the "public records exception" to the rule against hearsay, providing:

> A record or statement of a public office [is not excluded by the rule against hearsay] if:
> (A) it sets out:
>   i. the office's activities;
>   ii. a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
>   iii. in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
> (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.[61]

The rule governs the admissibility of "evaluative reports," which are "presumed not to be excluded under the hearsay rule unless there are indications of untrustworthiness."[62] The Fifth Circuit has set out the following three-part test for the admissibility of factual findings from a legally authorized investigation:

> First, the person making the report must have observed the matters contained in the report firsthand. Second, the report must be prepared pursuant to a duty imposed by law. Third,

---

[59] *Id.* at 6.
[60] R. Doc. 191 at 7.
[61] FED. R. EVID. 803(8).
[62] *Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991)

> the documents and surrounding circumstances must indicate trustworthiness.[63]

With respect to the first prong, it is clear from the face of the report that Steiner observed the Building firsthand and prepared his report based on his inspection.[64] As to the second prong, LA. REV. STAT. § 40:1730.23 outlines the authorities and duties of municipalities and parishes in conducting inspections to enforce building codes. The Steiner Report was prepared pursuant to a duty imposed by law.

With respect to the third prong, "[i]n light of the presumption of admissibility [of evaluative reports], the party opposing the admission of the report must prove the report's untrustworthiness."[65] McBride has failed to present any argument or evidence that the information in the Steiner Report indicates a lack of trustworthiness.[66] As a result, the Steiner Report is falls within the hearsay exception in Rule 803(8).[67]

McBride argues admission of Exhibit 51 would be unfairly prejudicial under Rule 403.[68] The exhibit has significant probative value because it is relevant to whether there were alleged defects in the Building. Its admission will not unfairly prejudice McBride.

Jeanes represents Exhibit 51 will be used in connection with the testimony of Steiner and Jeanes.[69] McBride argues Steiner should be limited to fact testimony.[70] McBride notes Steiner was not listed as an expert witness and argues Steiner may not offer testimony that falls outside the scope of lay testimony. He further asserts Steiner

---

[63] *United States v. Cent. Gulf Lines, Inc.*, 974 F.2d 621, 626 (5th Cir. 1992).
[64] Trial Ex. 51.
[65] *Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991)
[66] *See also United States v. Hansen*, 583 F.2d 325, 333 (7th Cir. 1978) (upholding admissibility of building inspection report under Rule 803(8)).
[67] Because the Steiner report falls under Rule 803(8), the Court does not reach Jeanes' other arguments regarding exceptions to the rule against hearsay.
[68] R. Doc. 188 at 4.
[69] The report of Plaintiff's expert Philip Beard does not mention Steiner or his report. R. Doc. 123-1.
[70] *Id.* at 6.

was not employed by RAPC in 2011, when the Building was constructed, and has no personal knowledge of what occurred at that time. Jeanes responds that she does not intend to use Steiner as an expert witness but rather as a representative of RAPC.[71]

Jeanes' witness list names Steiner as a fact witness representing RAPC, who will testify about "[i]nspection and permitting issues" and RAPC records.[72] He was not disclosed as an expert witness and has not produced an expert report.

Under Rule 701(c) of the Federal Rules of Evidence, a lay witness may not testify "based on scientific, technical, or other specialized knowledge within the scope of Rule 702," which lays out the requirements for expert witnesses.[73] The Fifth Circuit has explained the distinction between lay and expert testimony as follows:

> [A] lay opinion must be the product of reasoning processes familiar to the average person in everyday life. A lay opinion must be based on personal perception, must be one that a normal person would form from those perceptions, and must be helpful to the jury. Any part of a witness's opinion that rests on scientific, technical, or specialized knowledge must be determined by reference to Rule 702, not Rule 701.[74]

In *United States v. Riddle*, which was a criminal bank fraud case, the prosecution offered as a lay witness a bank examiner who was personally involved in some, but not all, of the bank examinations at issue in the case.[75] The Fifth Circuit explained that the examiner's personal knowledge of the case "would include such things as accounts of [his] interaction with bank officials during his examinations and personal observations of bank records and practices."[76] The court explained that the examiner was permitted to "express

---

[71] R. Doc. 191 at 4.
[72] R. Doc. 98 at 2, ¶ 5; R. Doc. 129 at 2, ¶ 5; R. Doc. 181 at 2 ¶ 4.
[73] Fed. R. Evid. 701(c).
[74] *United States v. Ebron*, 683 F.3d 105, 137 (5th Cir. 2012) (citations and internal quotation marks and brackets omitted).
[75] 103 F.3d 423, 427 (5th Cir. 1997).
[76] *Id.* at 428.

opinions that required specialized knowledge" if he drew "straightforward conclusions from observations informed by his own experience," but he was not permitted to "describe sound banking practices in the abstract," opine about how a particular government agency viewed certain complex transactions, or assert a causal relationship between the defendant's alleged wrongdoing and the ultimate failure of the bank at issue.[77]

Similarly, in this case, Steiner may testify about his personal knowledge—what he personally observed when he inspected the Building. He may not, however, opine about sound construction practices or about inspection and permitting practices and requirements generally.

Exhibit 51 includes statements regarding the legal responsibilities of the parties in this case. These statements constitute improper legal conclusions that fall outside the scope of Steiner's direct knowledge of the case and are therefore inadmissible. The following statements in Exhibit 51 must be redacted:

- "Contractor failed to schedule inspections during construction process."
- "Building manufacturer/contractor to propose a proper flashing method to alleviate condition."
- "Contractor must propose a code compliant solution to alleviate this condition."[78]

All other portions of Exhibit 51 will be admitted.

## VI. McBride's Objection to Exhibit 52 Overruled

McBride objects to the admission of Trial Exhibit 52, which consists of photographs taken by Plaintiff's expert Philip Beard, arguing the photographs are

---

[77] *Id.* at 428, 429.
[78] Trial Ex. 51.

hearsay.[79] "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[80] "Statement" means "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion."[81] Photographs are not hearsay because they are not statements.[82] As a result, the Court overrules McBride's objection to Exhibit 52.

## VII. McBride's Objection to Exhibits 57 and 58 Sustained

Jeanes objects to the admission of Exhibits 57 and 58, on the basis that they are irrelevant.[83] Exhibits 57 and 58 are images of various checks written by Jeanes, Bates Nos. Jeanes 0534, 0538–39, 0545–47, 0549, 0552, 0556–59, 0563, 0565,[84] 0567, 0570–74, 0577, 0579, 0584–86, 0591, 0594, and 0601–02.

The Court notes Exhibits 57 and 58 duplicate portions of Trial Exhibit 14, which consists of Bates Nos. Jeanes 0523–603 and to which the parties have not filed an objection. The parties have agreed to offer into evidence only those portions of Exhibit 14 that are relevant.

Relevant portions of Trial Exhibit 14 will be admitted into evidence by agreement of the parties,[85] and Exhibits 57 and 58 would be duplicative. As a result, the Court sustains Jeanes' objection on that basis.

---

[79] R. Doc. 188 at 6.
[80] *United States v. Watkins*, 591 F.3d 780, 786 (5th Cir. 2009).
[81] FED. R. EVID. 801.
[82] *See United States v. Oaxaca*, 569 F.2d 518, 525 (9th Cir. 1978) (holding photographs not hearsay because they are not "assertive or testimonial in character"); *CDx Holdings, Inc. v. Heddon*, No. 3:12-CV-126-N, 2012 WL 13018986, at *5 (N.D. Tex. Nov. 9, 2012) (same); *Blair v. City of Dallas, Texas*, No. 3:14-CV-01515-P, 2015 WL 12940189, at *6 (N.D. Tex. July 2, 2015), *aff'd sub nom. Blair v. City of Dallas*, 666 F. App'x 337 (5th Cir. 2016) (same).
[83] R. Doc. 180 at 1–2.
[84] Jeanes 0565 was erroneously marked as Jeanes 0656 in the binder index accompanying the exhibits. There is no page marked as Jeanes 0656 in Trial Exhibits 57 and 58.
[85] R. Doc. 205 at 1.

### VIII.  Jeanes' Objection to Exhibit 59 Overruled

Jeanes objects to the admission of Exhibit 59, Bates No. 1361–62, which is an unsigned version of the Proposal, on the basis of relevance.[86] McBride responds that the exhibit is relevant to show "there is consistency in what was offered and what was accepted" during the confection of the contract.[87] Exhibit 59 differs from Exhibit 3, the signed version of the Proposal, because Exhibit 59 is unsigned and contains no handwritten markings. The court finds Exhibit 59 is relevant to show the form of the Proposal initially offered by McBride. As a result, the Court overrules Jeanes' objection to Exhibit 59.

### IX.  Jeanes' Objection to Exhibit 60 Sustained

Jeanes objects[88] to the admission of Trial Exhibit 60, which consists of "Hand Drawings," Bates Nos. Jeanes 1364–65. The Court notes Exhibit 60 is a duplicate of pages 4–5 of Trial Exhibit 2, Bates Nos. S&S 025–26, to which the parties have not filed an objection. It also duplicates Trial Exhibit 38, Bates Nos. Jeanes 2053–54. Trial Exhibits 2 and 38 will be admitted into evidence, and Exhibit 60 would be duplicative. As a result, the Court sustains Jeanes' objection on that basis.

### X.  Jeanes' Objection to Exhibit 61 Overruled

Jeanes objects to the admission of Trial Exhibit 61, which consists of a drawing of the Building, on the ground that it is irrelevant.[89] McBride identifies the drawing as a drawing created by S & S after Jeanes' meeting with Jacob Stelly of S & S.[90] McBride

---

[86] R. Doc. 180 at 2–3.
[87] R. Doc. 192 at 8.
[88] *Id.* at 5.
[89] R. Doc. 180 at 3.
[90] R. Doc. 192 at 9.

argues the drawing is relevant to Jeanes' intent with respect to how the two metal buildings were to be joined together.[91] The Court finds the evidence relevant to whether there were defects in the design or construction of the Building and overrules Jeanes' objection.

## XI.  Jeanes' Objection to Exhibit 63 Overruled

Jeanes objects to the admission of Trial Exhibit 63, which are permit applications made in connection with the Building.[92] She argues the evidence is irrelevant because the applications are dated 2016 or later. McBride argues the documents are relevant to show the permitting requirements for farm structures.[93] The Court finds the documents relevant to show the requirements for permits in the building code, which are incorporated into the contract. To the extent the parties intended the Building to be a non-residential farm structure, the relevant building code requirements applies. Several portions of Exhibit 63 are analogous to the records and building code requirements admitted in Exhibits 44, 48, and 49. As a result, the Court overrules Jeanes' objection.

McBride argues the documents are "relevant to Jeanes' claims that she had no idea about permitting and inspections.[94] The Proposal was executed in 2010 and the Building was constructed in 2010 and 2011. These permits date from 2016. McBride will not be permitted to argue the documents are relevant to Jeanes' knowledge about permits or inspections at the time of the construction of the Building.

---

[91] *Id.*
[92] R. Doc. 180 at 9.
[93] R. Doc. 192 at 9.
[94] *Id.*

## XII.   Jeanes' Objection to Exhibit 66 Overruled

Jeanes objects to the admission of Trial Exhibit 66, which are photographs of the Building, stating she does not know when they were taken and by whom.[95] In response to this objection on authenticity grounds, McBride states the photographs were taken in February 2019 and depict the current state of the Building.[96] Rule 901 of the Federal Rules of Evidence requires that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."[97] The Court admits Exhibit 66, assuming McBride will introduce, for each photograph, testimony by a witness that he or she "recognizes and identifies the object depicted and . . . the photograph fairly and correctly represents it."[98]

Jeanes also argues the photographs are not relevant.[99] The Court finds the condition of the Building is highly relevant to the issues in this case. As a result, the Court overrules Jeanes' objection.

## XIII.  Jeanes' Objection to Exhibit 68 Deferred

Jeanes objects to the admission of Trial Exhibit 68, which is a letter from Jeanes' attorney to McBride, dated April 19, 2016, concerning the instant dispute.[100] Jeanes argues the letter is hearsay and is irrelevant. McBride asserts the document is being used to show that McBride was put on notice of the issues with the Building in April 2016.[101] He states, "[e]ven after addressing the issues, Jeanes continued to pursue this claim."[102]

---

[95] R. Doc. 180 at 4–5.
[96] R. Doc. 192 at 9–10.
[97] FED. R. EVID. 901(a).
[98] *United States v. Winters*, 530 F. App'x 390, 395 (5th Cir. 2013) (quoting *United States v. Clayton,* 643 F.2d 1071, 1074 (5th Cir. Unit B 1981)).
[99] *Id.*
[100] R. Doc. 180 at 5–6.
[101] R. Doc. 192 at 10.
[102] *Id.*

McBride does not offer the document to show the truth of its contents, but rather to show he received the letter and knew of its contents. He does not offer the statements in the letter for the truth of the matters they assert. As a result, the statements contained in the letter are not hearsay.

However, McBride does not show how the issue of whether he was on notice of issues with the Building in April 2016 is relevant to any issue in this case. As a result, the Court defers ruling on this objection.

## CONCLUSION

For the foregoing reasons, the Court rules on the parties' objections to exhibits Jeanes[103] as set forth below:

| Exhibit | Ruling |
|---------|--------|
| 43 | **OVERRULED**. |
| 44–48 | **OVERRULED**. |
| 49 | **SUSTAINED**. The exhibit is duplicative of Trial Ex. 6 at 16–27, Bates Nos. Jeanes 2469–80. |
| 50 | **SUSTAINED**. The exhibit is duplicative of Trial Ex. 9 at 30, Bates Nos. Jeanes 2486. |
| 51 | **SUSTAINED IN PART**. The exhibit will be admitted with redactions, as set forth above. |
| 52 | **OVERRULED**. |
| 53 | **SUSTAINED** as unopposed. |
| 57–58 | **SUSTAINED**. The exhibits are duplicative of portions of Trial Ex. 14. |
| 59 | **OVERRULED**. |
| 60 | **SUSTAINED**. The exhibit is duplicative of Trial Ex. 2 at 4–5, Bates Nos. S&S 025–26 and of Trial Ex. 38. |
| 61 | **OVERRULED**. |

---

[103] R. Docs. 180, 188.

| 63 | **OVERRULED**. Provided, McBride will not be permitted to argue the documents are relevant to Jeanes' knowledge about permits or inspections at the time of the construction of the Building. |
|----|----|
| 66 | **OVERRULED**. |
| 68 | **DEFERRED**. |

**New Orleans, Louisiana, this 22nd day of June, 2019.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**