UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| JANET JEANES,<br>    Plaintiff | CIVIL ACTION |
|---|---|
| VERSUS | NO. 16-1259 |
| GREG MCBRIDE, ET AL.,<br>    Defendants | SECTION: "E" (4) |

## ORDER AND REASONS

Before the Court is Plaintiff Janet Jeanes' oral motion, made during the trial of this matter, for reconsideration of the Court's Order and Reasons of June 6, 2019 ("the June 6 Order")[1] and its Supplemental Order and Reasons on the motion on June 18, 2019 ("the June 18 Supplemental Order").[2] Both orders addressed Defendant Greg McBride's motion in limine to exclude the testimony of Plaintiff's expert Philip Beard. McBride orally opposed the motion for reconsideration. For the reasons that follow, the Court **DENIES** Plaintiff's motion for reconsideration.

## BACKGROUND

The factual background of this case and of Beard's proposed testimony is laid out in the June 6 Order.[3] In that order, the Court ruled that Beard may not testify at trial about the cost estimates made by James Decker. The Court noted that Beard did not independently perform any analysis of Decker's estimates, but rather copied them directly into his report. The Court found that he would be unable to explain the basis for the costs listed in Decker's estimates and that, instead, he would only be able to act as a mouthpiece or spokesperson for Decker.

---

[1] R. Doc. 194.
[2] R. Doc. 202.
[3] R. Doc. 194.

1

The Court also issued a Supplemental Order and Reasons on the motion on June 18, 2019 ("the June 18 Supplemental Order").[4] In the June 18 Supplemental Order, the Court ruled that Beard may not rely on repair cost estimates from Rock Solid Foundations & Foundation Repairs ("Rock Solid") and Reed Building Systems, Inc. ("Reed") because (1) Beard did not disclose any opinions based on those estimates, (2) Beard may not act as a mouthpiece for Rock Solid or Reed, and (3) Beard has not established the estimates are reliable.[5]

During trial on June 25, 2019, Jeanes moved, outside the hearing of the jury, for reconsideration of the June 6 Order and the June 18 Supplemental Order. She again argued the Court's ruling misinterprets Rule 703 of the Federal Rules of Evidence and constitutes reversible error. In support, she cites *Trepel v. Roadway Exp., Inc.*[6] and *Ohio Envtl. Dev. Ltd. P'ship v. Envirotest Sys. Corp.*[7]

## **RULE 59(e) STANDARD**

A motion for reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure "must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued."[8] A motion for reconsideration, however, "is 'not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of [the order].'"[9] "The Court is mindful that '[r]econsideration of a judgment after its entry is an extraordinary remedy

---

[4] R. Doc. 202.
[5] *Id.*
[6] 194 F.3d 708 (6th Cir. 1999).
[7] 478 F. Supp. 2d 963 (N.D. Ohio 2007).
[8] *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir.2003).
[9] *Lacoste v. Pilgrim Int'l*, 2009 WL 1565940, at *8 (E.D. La. June 3, 2009) (Vance, J.) (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004)).

2

that should be used sparingly.'"[10] "When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted."[11]

In deciding motions under the Rule 59(e) standards, the Court considers the following factors:

(1) whether the movant demonstrates the motion is necessary to correct manifest errors of law or fact upon which the judgment is based;
(2) whether the movant presents new evidence;
(3) whether the motion is necessary in order to prevent manifest injustice; and
(4) whether the motion is justified by an intervening change in the controlling law.[12]

Plaintiff argued the Court's order was reversible error because it misinterpreted Rule 703. Plaintiff appears to argue reconsideration of the Court's order is necessary to correct a manifest error of law.

## RULE 703 OF THE FEDERAL RULES OF EVIDENCE

A district court is "best placed to evaluate" the reasonableness of an expert's reliance on facts or data.[13] Under Rule 703 of the Federal Rules of Evidence, expert witnesses may base opinions on facts or data that the expert "has been made aware of or personally observed," including otherwise inadmissible facts or data if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject."[14] "Nevertheless, the court may not abdicate its independent

---

[10] *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. CIV.A. 09-4369 R, 2010 WL 1424398, at *4 (E.D. La. Apr. 5, 2010) (alteration in original) (quoting *Templet,* 367 F.3d at 479).
[11] *Lightfoot v. Hartford Fire Ins. Co.*, No. 07-4833, 2012 WL 711842, at *3 (E.D. La. Mar. 5, 2012) (Brown, J.).
[12] *Castrillo*, 2010 WL 1424398, at *4. The Court notes that the time limits of Rule 59 do not apply in this matter because the order appealed is interlocutory. Rules 59 and 60 set forth deadlines for seeking reconsideration of final judgments. *See Carter v. Farmers Rice Milling Co., Inc.*, 33 F. App'x 704 (5th Cir. 2002); *Lightfoot*, 2012 WL 711842, at *2.
[13] *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 526 (5th Cir. 2013).
[14] FED. R. EVID. 703.

responsibilities to decide if the bases meet minimum standards of reliability as a condition of admissibility."[15] A district court also may exclude expert testimony when it is "based on insufficient, erroneous information."[16] "[T]he 'reasonable reliance' requirement of Rule 703 is a relatively narrow inquiry. When an expert relies on inadmissible information, Rule 703 requires the trial court to determine whether that information is of a type reasonably relied on by other experts in the field. If so, the expert can rely on the information in reaching an opinion."[17]

## ANALYSIS

### I. In the final analysis, Rule 703 does not apply because Beard did not opine about the amount of damages.

In Beard's expert report, he describes the purpose of his investigation as follows:

> The primary thrust of this investigation is to establish threshold limits with regard to structural integrity and workmanship. Based on said thresholds established and data gathered, conclusions and/or opinions will be offered concerning the structural integrity of the structure or that element of the structural system investigated and why said element was defective.[18]

It is clear that Beard was retained to express opinions about structural integrity and workmanship. He merely inserts into his report, without discussion or analysis, Decker's five pages of estimates of the cost of repair under the heading "Estimated cost to repair all damages."[19] At the conclusion of his report, Beard states, "The recommendations and costs of repair *noted herein* are created by the Contractors [*sic*] failure to provide the

---

[15] *Trepel v. Roadway Exp., Inc.*, 194 F.3d 708, 721 (6th Cir. 1999) (quoting *In re "Agent Orange" Product Liab. Litig.*, 611 F.Supp. 1223, 1245 (E.D.N.Y. 1985)).
[16] *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009)
[17] FED. R. EVID. 702, advisory committee's note to 2000 amendment.
[18] R. Doc. 123-1 at 18.
[19] *Id*. at 32–36.

following minimum contract and workmanship requirements."[20] Nowhere does Beard opine that these amounts represent the reasonable cost of repair of the defects in design and construction identified by him. Instead, he merely "notes" the costs of repair he says were estimated by Decker.

Neither does Beard express his own opinion about the cost of repairs in his deposition. In his deposition, he testifies:

> Q. The damage repair that you had an estimated cost of repair or damages. This estimate is not your estimate. Do you agree with that.
> A. That's correct. I have a contractor that I've worked with before go and do the estimate based on the information in my report.
> . . .
> Q. [Y]ou didn't do a cost takeoff to determine whether or not any of his numbers are correct or not?
> A. No, sir. I did not.
> Q. Essentially, you're just relying on his – this is how much I think it's going to cost, and you're relying on that?
> A. That's correct. But I'm relying on his integrity because I know the man, and he does good work.[21]

He further testifies:

> Q. And in essence of the entire cost of the construction work, you're not going to be an expert in providing that today?
> A. No. I'm not.
> . . .
> Q. And you've not given an opinion as to what the actual – an actual construction cost would be?
> A. That's correct.[22]

Rule 703 allows an expert to *base an opinion* on facts or data that the expert "has been made aware of or personally observed."[23] Before an expert may rely on Rule 703 to make inadmissible hearsay testimony admissible because the expert reasonably relied on

---

[20] *Id.* at 36 (emphasis added).
[21] R. Doc. 202-1 at 5–6.
[22] R. Doc. 111-3 at 7–8.
[23] FED. R. EVID. 703.

5

it in formulating an opinion, the expert must first express an opinion. In this case, Beard expresses no opinion on the reasonable cost of repairs, but merely copies Decker's repair cost estimates into his report. As a result, Rule 703 does not apply in this case.[24]

## II. Repair cost estimates are properly the subject of expert testimony.

If repair cost estimates are introduced into evidence, they must be the subject of expert testimony. In *Pendarvis v. American Bankers Insurance Company of Florida*, the district court allowed a lay witness to testify about estimated repair costs.[25] The Fifth Circuit found the repair costs estimates required "at a minimum, [the lay witness] to forecast the amount, type, and costs of materials needed, as well as the amount of labor required to complete the long list of repairs. These forecasts are not common knowledge, familiar in everyday life. They require specialized knowledge of construction and repair work."[26] The Fifth Circuit found the district court abused its discretion in allowing lay testimony about cost estimates.[27]

Decker was not disclosed as an expert witness and did not produce a report. Jeanes did not list Decker as an expert witness.[28] Jeanes has not provided Decker's curriculum vitae, a description of his methodology, or any other method by which the Court may evaluate the reliability of his estimates. Jeanes will not be allowed to introduce Decker's expert testimony through Beard.

## III. Beard will not be permitted to parrot Decker's opinions.

Even if Beard had couched his comments on costs as an opinion based on Decker's estimates, his opinion would be inadmissible because he would merely be parroting

---

[24] Beard testified at his deposition that Decker used Beard's findings to decide what repairs needed to be included. It appears Decker relied on Beard's findings, rather than the other way around.
[25] 354 F. App'x 866 (5th Cir. 2009) (unpublished).
[26] *Id.* at 869.
[27] *Id.*
[28] R. Doc. 181 (witness list).

6

Decker's opinions. Under Rule 703, when one expert bases an opinion on another expert's opinion, "there is no general requirement that the other expert testify as well."[29] But, in cases when "the soundness of the underlying expert judgment is in issue," the testifying expert cannot "just parrot" the opinion of the expert who provided the underlying opinion or become that expert's "spokesman" or "mouthpiece."[30]

At trial, Beard will be unable to explain the basis for the costs listed in Decker's itemized estimates.[31] Instead, if McBride questions the soundness of Decker's expert judgment, Beard would only be able to act as a mouthpiece or spokesperson for Decker. As a result, Beard will not be permitted to parrot Decker's cost estimates.

### IV. The cases Jeanes cites are inapposite and do not justify reconsideration.

In support of her oral motion for reconsideration, Jeanes cited *Trepel*, in which the Sixth Circuit addressed the admissibility of testimony about a conversation between the plaintiff, who owned a rare piece of African art, and the owner of a similar piece of art, about offers to buy the latter's artwork.[32] The plaintiff's expert relied on this conversation to form an opinion about the valuation of the plaintiff's piece of art because there were very few comparable pieces of art in the world, and none of them had changed hands recently.[33] The district court excluded testimony about the conversation on hearsay grounds, but did not consider Rule 703.[34] The Sixth Circuit found it "clear from the record

---

[29] *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002)
[30] *Id.*; *see also Eveler v. Ford Motor Co.*, No. CV 16-14776, 2017 WL 3382460, at *9 (E.D. La. Aug. 7, 2017) ("[U]nblinking reliance on another expert's testing also renders [expert]'s methodology unreliable."); *Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am.*, No. CIV.A. 06-4262, 2009 WL 2356292, at *4 (E.D. La. July 28, 2009) ("An expert 'is not permitted to be the mouthpiece of a scientist in a different specialty.'") (quoting *Dura*, 285 F.3d at 614).
[31] R. Doc. 123-1 at 53–72.
[32] 194 F.3d at 716.
[33] *Id.*
[34] *Id.* at 717.

7

that experts in the field of appraising African art . . . frequently rely upon evidence of comparable sales, regardless of how that evidence comes to them."[35] Noting that the district court did not consider Rule 703 when it excluded "all mention" of the other piece of art, the Sixth Circuit reversed the district court's decision.[36]

In *Trepel*, the Sixth Circuit found evidence of the previous offers admissible because the expert relied on discrete facts about prior offers on another piece of art to perform his own analysis and arrive at a conclusion about the value of the plaintiff's artwork.[37] This is the type of data on which an expert appraiser would reasonably rely. In contrast, in this case, Jeanes attempts to have Beard merely copy Decker's pages and pages of cost estimates without performing his own analysis or arriving at his own conclusion about the cost of the necessary repairs. Testimony about cost estimates requires a separate expert—Decker himself—to be disclosed, provide an expert report, testify, and be subject to cross-examination regarding his qualifications, methodology, and conclusions.

Jeanes also cites *Envirotest*, in which the plaintiff hired an architect to estimate the cost of repair of a property.[38] The architect prepared an expert report and was qualified as an expert witness, and the court found the architect's report "determined the actual costs of repair to a reasonable degree of certainty as required by Ohio law."[39] The plaintiff hired another expert, who relied on the architect's calculations.[40] The court found the second expert properly relied on the architect's calculations in performing his own

---

[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] 478 F. Supp. 2d at 974.
[39] *Id.* at 975.
[40] *Id.*

analysis because he explicitly stated his assumption the architect's report was credible, and, importantly, he "satisfied himself that [the architect]'s findings were consistent with [his] own personal observations."[41] The court specifically noted that the defendant "may further attack [the architect]'s methodology or the precision of his calculations at trial."[42]

In this case, unlike in *Envirotest*, Beard did not state an opinion that Decker's estimates were accurate or verify the estimates. Decker has not prepared an expert report and will not testify at trial. As a result, McBride cannot cross-examine Beard or Decker on Decker's methodology for creating cost estimates. Moreover, Beard did not actually use Decker's estimates to perform his own analysis. As a result, *Envirotest* is inapposite.

The cases Jeanes cited are not controlling on this Court, and the Court does not find them persuasive. Jeanes has failed to meet her burden of showing reconsideration of the Court's orders on Beard's testimony is necessary to correct a manifest error of law.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff Janet Jeanes' oral motion for reconsideration of the Court's Order and Reasons of June 6, 2019[43] and its Supplemental Order and Reasons on the motion on June 18, 2019[44] be and hereby is **DENIED**.

Lafayette, Louisiana, this 25th day of June, 2019.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[41] *Id.*
[42] *Id.*
[43] R. Doc. 194.
[44] R. Doc. 202.